**Joanna M. Hill (SBN 301515)**
joanna.hill@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA  90067-3012
Telephone:  310.788.4400
Facsimile:   310.788.4471

**Floyd A. Mandell**
floyd.mandell@katten.com
(*pro hac vice application to be filed*)
**Jeffrey A. Wakolbinger**
jeff.wakolbinger@katten.com
(*pro hac vice application to be filed*)
**KATTEN MUCHIN ROSENMAN LLP**
525 West Monroe St.
Chicago, IL  60661
Telephone:  312.902.5200
Facsimile:   312.902.1061

Attorneys for Plaintiff F21 OpCo, LLC

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| F21 OPCO, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AIRWAIR INTERNATIONAL LTD.,<br><br>　　　　Defendant. | CASE NO. 2:22-cv-01684<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF TRADEMARKS AND FOR CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS** |

152253403

Plaintiff F21 OpCo, LLC ("**F21 OpCo**") hereby states the following allegations for its Complaint for Declaratory Judgment and for Cancellation of Federal Trademark Registrations against Defendant AirWair International Ltd. ("**AirWair**").

## INTRODUCTION

1. AirWair makes and sells footwear under its Dr. Martens (or Doc Martens) brand. Many of the products it sells (perhaps a majority of them) bear familiar characteristics of "combat boots." They have heavy, leather uppers attached to thick outsoles with welt stitching. They lace up through multiple metal grommets or have thick buckles. They have prominent tread patterns for traction. They have heel tabs to pull them over the foot.

2. AirWair did not invent the combat boot. The lineage of this style of footwear can be traced back from current police, military, motorcycle, work, and fashion use to the grunge music of the 1990s, the punk movement of the 1970s, the shined US Army boots and motorcycle counterculture of the 1950s, World War I "trench boots," and beyond.

3. AirWair's brand of combat-style boots and other footwear prominently displays a visible, contrasting, yellow welt stitch around the perimeter of the sole. Many Doc Martens boots also display a large, scripted, black heel loop with the words "AirWair with Bouncing Soles" in yellow. AirWair highlights these features in its marketing. *See, e.g.*, https://www.drmartens.com/us/en/p/26646001 ("The platform boots are finished with a black and yellow heel loop and our unmistakable yellow stitching.").

4. Somewhere along the line, AirWair began a campaign to expand its territory, initiating skirmishes with various retailers and manufacturers who make and/or sell combat-style boots that *do not* display black and yellow heel loops or AirWair's "unmistakable yellow stitching." And it has developed a reputation for aggressively enforcing its expanding view of its trademark rights against retailers and manufacturers of footwear. F21 OpCo is a recent victim of AirWair's acts of

2
**COMPLAINT FOR DECLARATORY JUDGMENT**

aggression, having received threats over the course of a year and a half and demands that it stop selling combat-style boots that do not display the elements of any trade dress registration owned by AirWair.

5. In an apparent effort to squash competition and force consumers who are attracted to a particular style of footwear into buying that footwear from AirWair, AirWair repeatedly asserts that its various trade dress registrations cover more than what is claimed in the product-configuration drawings AirWair submitted during the application process. AirWair is not merely seeking to protect the source-identifying aspects of its footwear; it is trying to protect the non-source-identifying aspects of its footwear, as well—trying to be the only company that can sell boots of a certain popular style.

6. And in its efforts to secure a broader monopoly than the USPTO ever would allow, AirWair seeks, from F21 OpCo and others, settlement agreements that would have AirWair's competitors agree to refrain from selling, not just those products that display something that is arguably similar to the composite trade dress claimed in AirWair's various trade dress registrations, but also those products that display *any single element* of that composite trade dress. AirWair has, for example, demanded that its competitors refrain from selling any footwear with a welt stitch, any boot with a heel loop, or any shoe with an angled front heel edge.

7. F21 OpCo would prefer not to be on the front lines of this fight. But after enduring well over a year of repeated threats and demands from AirWair, and faced with AirWair's refusal to entertain any reasonable agreement that would define permissible and impermissible design elements for combat-style boots that are not infringing AirWair's registered trade dress, F21 OpCo has decided that this aggression will not stand. This ongoing dispute between AirWair and F21 OpCo is ripe for adjudication. F21 OpCo feels it has no choice but to defend itself by filing this action for declaratory judgment and for cancellation of some of AirWair's ill-gotten and misused trade dress registrations. F21 OpCo brings this action to remove the cloud

AirWair has cast over its head and to slow AirWair's attempted roll toward an unlawful monopoly of the market for combat-style footwear.

## PARTIES

8. Plaintiff F21 OpCo, LLC, is a limited liability company organized under the laws of Delaware, having its principal place of business at 3880 N. Mission Road, Los Angeles, California 90031.

9. On information and belief, Defendant AirWair International Ltd. is a company of the United Kingdom, located and doing business at Cobbs Lane, Wollaston, Northamptonshire, UK, NN29 7SW, and having an alternate address at 10 Northwest 10th Avenue, Portland, OR 97209.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1338 because it is an action for declaratory judgment for claims involving trademarks and because an actual case or controversy exists between AirWair and F21 OpCo.

11. This Court has personal jurisdiction over AirWair because it conducts business in the state of California and because it has repeatedly threatened legal action related to the subject matter of this dispute against a company that is headquartered in Los Angeles, California.

12. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to F21 OpCo's claim have occurred in this district.

## FOREVER 21

13. The Forever 21 brand began in 1984 as an immigrant's dream, with a single, 900-square-foot store in Los Angeles, California. It has since grown into a fashion giant. Today, Forever 21 is one of the most well-known specialty retailers of apparel, clothing, footwear, and accessories, operating through its online store at www.forever21.com and its hundreds of retail stores.

14. In 2019, various factors, including Forever 21's rapid international expansion and changing retail trends, had a negative financial impact on Forever 21 and ultimately led to its decision to reorganize and file for Chapter 11 bankruptcy.

15. In early 2020, Authentic Brands Group, Simon Property Group, and Brookfield Property Group formed an entity to acquire the operations and assets of Forever 21 from the bankruptcy estate. F21 OpCo has operated Forever 21 retail and online stores continuously since that acquisition.

## CORRESPONDENCE AND THREATS FROM AIRWAIR

16. On or around September 29, 2020, AirWair, through outside counsel, sent a letter addressed to the Legal Department of Forever 21, Inc.

17. In its September 29 letter, AirWair claimed that certain footwear sold in Forever 21 stores was "confusingly similar to AirWair's trade dress and uses AirWair's trade dress features." AirWair asserted that Forever 21, Inc., by selling the footwear identified in the letter, was violating a settlement agreement Forever 21, Inc., had entered into with AirWair in 2010.

18. On or around October 16, 2020, AirWair, again through counsel, sent another letter addressed to Forever 21, Inc., demanding, among other things, that Forever 21 cease selling all footwear AirWair characterized as infringing and account for all sales and revenue derived from those sales.

19. The October 16 letter was routed to the legal department of F21 OpCo, which by that time had acquired the Forever 21 assets.

20. On November 10, 2020, in-house counsel for F21 OpCo advised AirWair's counsel in writing that the October 16 letter had been forwarded to him, that Forever 21, Inc., was in bankruptcy proceedings, and that the ongoing business and assets of Forever 21, Inc., had been acquired by F21 OpCo, LLC, which was not bound by the 2010 settlement agreement between the company in bankruptcy and AirWair. Counsel for F21 OpCo also advised that F21 OpCo had reviewed AirWair's claims and did not believe they had merit.

21. On January 12, 2021, AirWair provided F21 OpCo with a settlement demand (the "**2021 Demand**"), which among other things, would require F21 OpCo to agree to refrain permanently from offering or selling "any footwear or any component part thereof that is confusingly similar to the AIRWAIR Trade Dress [or] contains any of the AIRWAIR trade dress features described in the AIRWAIR Trade Dress Registrations." The 2021 Demand also would have required F21 OpCo to pay escalating liquidated damages.

22. F21 OpCo believed that the 2021 Demand was an effort on the part of AirWair to secure a monopoly over generic combat boot styles, which far exceeded any trade dress rights AirWair has in any source-identifying elements of its footwear. Such a monopoly would stifle fair competition to the detriment of AirWair's competitors and the consuming public, which benefits from fair competition. Accordingly, F21 OpCo did not immediately respond to the 2021 Demand.

23. Notwithstanding, AirWair's apparent decision not to pursue any claims involving the footwear it identified in its letter of September 29, 2020, F21 OpCo felt it was operating with a cloud over its head in terms of its ability to sell combat-styled footwear, as so many of its competitors were doing. On May 25, 2021, in an effort to remove that cloud, F21 OpCo's outside counsel sent a letter to AirWair, explaining why they believed AirWair was overreaching in its efforts to claim broad rights in generic, functional, and/or ornamental aspects of footwear and why the 2021 Demand was unacceptable to F21 OpCo.

24. AirWair did not respond to F21 OpCo's letter of May 25, 2021.

25. On October 22, 2021, having still not received a response from AirWair, but still operating under a cloud of uncertainty with regard to its sale of combat-style boots, F21 OpCo filed in the Trademark Trial and Appeal Board a petition to cancel two of the federal trademark registrations that AirWair had cited in its letter of September 29, 2020. F21 OpCo filed the petition as a defensive maneuver to prevent those two registrations (5,067,689 and 5,67,692) from acquiring incontestable status,

which can be claimed five years after registration if a mark has been in continuous use and is not then subject to challenge. Both of those registrations were issued October 25, 2016. If F21 OpCo did not challenge those registrations by October 25, 2022, it would have forever lost the right to raise any challenge on certain grounds, and AirWair would be able to claim those registrations as conclusive proof that it owned valid trade dress rights pursuant to 15 U.S.C. 1115(b). Based on AirWair's offensive postures, drawn out over many months and still unresolved, F21 OpCo did not want to give up that potential defense.

26. Following receipt of F21 OpCo's petition to cancel, AirWair reached out to F21 OpCo to again ask whether settlement of the cancellation action might be possible.

27. On January 7, 2022, F21 OpCo provided AirWair with a set of proposed settlement terms that would have provided parameters as to items design attributes that would not be included on any item of footwear sold by F21 OpCo, on the one hand, and design attributes that would not be challenged by AirWair, on the other hand.

28. AirWair did not respond immediately. Instead, it sought (and obtained) F21 OpCo's consent to a motion for extension of its deadline to respond to the petition to cancel. AirWair's most recent request for an extension—its fourth—was filed March 2, 2022. Its current answer deadline in that proceeding is April 3, 2022.

29. On March 3, 2022, AirWair finally responded to F21 OpCo's proposed settlement terms with a new demand of its own (the "**2022 Demand**"). The 2022 Demand represented a rejection of nearly all of F21 OpCo's proposed terms and included yet another demand for F21 OpCo's sales figures for multiple products.

**AIRWAIR'S CLAIMED TRADE DRESS REGISTRATIONS**

30. AirWair has identified the following federal trademark registrations (the "**Asserted Registrations**") in connection with its correspondence claiming infringement by F21 OpCo, all of which are registered for footwear:

| Reg. No. | Mark Drawing | Description of Mark |
|---|---|---|
| 2,102,468 | | The mark consists of the design of an undersole. The phantom lining is not a part of the mark, but merely indicates the position of the mark. |
| 2,437,750 | | The mark consists of a welt stitch located around the perimeter of footwear. The phantom lining is not a part the mark, but merely indicates the position of the mark. The drawing of the welt stitch is lined for the color yellow and claim is made to color. |
| 2,437,751 | | The mark consists of the combination of yellow stitching in the welt area and a two-tone grooved sole edge. The drawing of the welt stitch is lined for the color yellow, and claim is made to color. |

| Reg. No. | Mark Drawing | Description of Mark |
|---|---|---|
| 5,067,689 | | Color is not claimed as a feature of the mark. The mark consists of the design of a sole edge including longitudinal ribbing, and a dark color band over a light color. The phantom lining is not a part of the mark, but merely indicates the position of the mark. |
| 5,067,692 | | Color is not claimed as a feature of the mark. The mark consists of longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear. The phantom lining is not a part of the mark, but merely indicates the position of the mark. |

### AIRWAIR'S MOST RECENT CLAIM OF INFRINGEMENT

31. In connection with its correspondence of March 3, 2022, AirWair identified yet another Forever 21 product it claims to infringe AirWair's trade dress. A photograph of this item, the "faux leather platform bootie," is depicted below:



32. The depicted faux leather platform bootie does not display the design shown in Reg. No. 2,102,468 (the "**'468 Registration**") because it does not show the undersole design displayed in the drawing for the '468 Registration.

33. The depicted faux leather platform bootie does not display the design shown in the drawing of the mark claimed in Reg. No. 2,437,750 (the "**'750 Registration**"), which is described in the registration as "a [yellow] welt stitch located around the perimeter of footwear." The faux leather platform bootie does not display a yellow welt stitch.

34. The depicted faux leather platform bootie does not display the design shown in the drawing of the mark claimed in Reg. No. 2,437,751 (the "**'751 Registration**"), which is described in the registration as "the combination of yellow stitching in the welt area and a two-tone grooved sole edge." The faux leather platform bootie does not display a yellow welt stitch or a two-tone grooved sole edge.

35. The depicted faux leather platform bootie does not display the design shown in the drawing of the mark claimed in Reg. No. 5,067,689 (the "**'689 Registration**"), which is described in the registration as "the design of a sole edge including longitudinal ribbing, and a dark color band over a light color." The faux leather platform bootie does not display longitudinal ribbing or a dark color band over a light color.

36. The depicted faux leather platform bootie does not display the design shown in the drawing of the mark claimed in Reg. No. 5,067,692 (the "**'692 Registration**"), which is described in the registration as "longitudinal ribbing and a dark color band over a light color on the outer sole edge, welt stitching, and a tab located at the top back heel of footwear." The faux leather platform bootie does not display longitudinal ribbing or a dark color band over a light color.

37. Thus, the only design element claimed in *any* of the Asserted Registrations that are present on the faux leather platform bootie are (a) a welt stitch and (b) a heel tab. Welt stitches and heel tabs are, of course, common, functional elements that have long been utilized on a variety of footwear and that are not exclusive to AirWair.

38. AirWair's email of March 3, 2022, identified the following Forever 21 items as "known infringing SKUs" (the "**Disputed Footwear**"):

    a. "Buckled Platform Boots" (Product Code 2000415902)

    b. "Faux Leather Combat Boots" (Product Code 2000387294)

    c. "Lace-Up Combat Boots" (Product Code 2000410974)

    d. "Neon Platform Ankle Boots" (Product Code 2000415887)

e. "Faux Leather Caged Sandals" (Product Code 200409244)

f. "Faux Patent Leather Combat Boot" (Product Code 2000430131)

g. "Faux Snakskin [*sic*] Platform Booties" (Product Code 200417788)

h. "Lug Sole Combat Boots" (Product Code 200417999)

i. "Platform Chelsea Booties" (Product Code 200422982)

j. "Lug-Sole Combat Boots" (Product Code 200438191)

k. "Faux Leather Lace-Up Combat Boots" (Product Code 200443671)

l. "Faux Leather Zip Up Booties" (Product Code 200443666)

m. "Faux Leather Platform Booties" (Product Code 2000440518)

n. "Faux Leather Chelsea Boots" (Product Code 2000438186)

o. "Faux Fur-Lined Chelsea Booties" (Product Code 2000447483)

p. "Platform Lug-Sole Chelsea Booties" (Product Code 2000451733)

q. "Faux Leather Lace-Up Booties" (Product Code 2000449648)

r. "Lug-Sole Combat Boots" (Product Code 2000453005)

39. None of the Disputed Footwear displays visible, yellow welt stitching or black-and-yellow heel tabs, which, upon information and belief, are predominantly what makes a Dr. Marten boot recognizable as a Dr. Marten boot.

## FUNCTIONAL, GENERIC, AND DESCRIPTIVE QUALITIES OF THE CLAIMED AIRWAIR TRADE DRESS

40. The following elements of AirWair's claimed trade dress depicted and described in the Asserted Registrations are functional:

a. *Welt stitching* – A welt stitch is a common means of securing the sole of a shoe or boot to the upper. Welt stitching creates a waterproof seal where the sole attaches to the upper and makes the shoe or boot capable of being completely resoled. Boots and dress shoes produced by many manufacturers utilize welt stitching.

12
COMPLAINT FOR DECLARATORY JUDGMENT

b. *Heel tab* – A heel tab (particularly of the size depicted in the '692 Registration, allows the wearer to insert his or her finger through the loop and pull a boot over the foot. For this reason, many shoes, sandals, and boots from many manufacturers possess this feature.

c. *A midsole design having a dark color band over a light color* – Combat-style boots often have black or dark brown uppers. The dark band at the top of a lighter midsole blends in better with a darker upper, particularly when the shoe is viewed from above, where the welt area is visible. Many shoes, sandals, and boots from many manufacturers possess this feature.

d. *Textured grooves around the midsole* – Textured grooves or "longitudinal ribbing" that surround the midsole provide grip, which aids the wearer in pulling the shoe or boot off. Many shoes and boots from many manufacturers possess this feature.

e. *A thick undersole (tread) pattern visible from the side* – The undersole is responsible for traction. Lug soles and other thick tread patterns necessarily create a visible pattern of tread and the spaces between the treads when a shoe or boot is viewed from the side. Many shoes and boots from many manufacturers possess this feature.

41. The following elements of AirWair's claimed trade dress depicted and described in the Asserted Registrations are generic and/or descriptive and/or ornamental:

a. Longitudinal ribbing;

b. A midsole with a dark color band over a light color band; and

c. A non-functional heel tab.

These attributes, alone, and in combination, have been used by many shoe manufacturers for many years, which makes AirWair's use of those features not substantially exclusive.

## FIRST CAUSE OF ACTION

### (Declaration of Non-Infringement – 15 U.S.C. § 1114)

42. F21 OpCo incorporates paragraphs 1 through 41 herein by reference.

43. F21 OpCo's sale, offering for sale, distribution, or advertising of any of the Disputed Footwear is not likely to cause confusion, or to cause mistake, or to deceive consumers of footwear by virtue of any similarity to any valid trade dress design covered by any of the Asserted Registrations.

44. Thus, F21 OpCo has not violated any of AirWair's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114, in connection with any of the Disputed Footwear.

45. An actual, present, and justiciable controversy has arisen between AirWair and F21 OpCo concerning the Disputed Footwear.

46. Unless and until a declaratory judgment of non-infringement is entered in F21 OpCo's favor, F21 OpCo is operating under a cloud and cannot enjoy an unfettered right to design and sell footwear with common, ornamental, decorative, functional designs.

## SECOND CAUSE OF ACTION

### (Declaration of Non-Infringement – 15 U.S.C. § 1125(a))

47. F21 OpCo incorporates paragraphs 1 through 46 herein by reference.

48. F21 OpCo has not, on or in connection with the Disputed Footwear, used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of F21 OpCo with AirWair, or as to the origin, sponsorship, or approval of F21 OpCo's goods, services, or commercial activities by virtue of infringing any valid registered or non-registered trade dress owned by AirWair.

49. Thus, F21 OpCo has not violated any of AirWair's rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, in connection with any of the Disputed Footwear.

50. An actual, present, and justiciable controversy has arisen between AirWair and F21 OpCo concerning the Disputed Footwear.

51. Unless and until a declaratory judgment of non-infringement is entered in F21 OpCo's favor, F21 OpCo is operating under a cloud and cannot enjoy an unfettered right to design and sell footwear with common, ornamental, decorative, functional designs.

## THIRD CAUSE OF ACTION

**(Cancellation of US Trademark Reg. No. 5,067,689 for Lack of Inherent or Acquired Distinctiveness and/or Failure to Function as a Mark)**

52. F21 OpCo incorporates paragraphs 1 through 51 herein by reference.

53. The claimed mark covered by the '689 Registration is a product configuration that is an ornamental design as used in connection with the goods identified in the '689 Registration.

54. The claimed mark covered by the '689 Registration is not inherently distinctive.

55. The claimed mark covered by the '689 Registration has not acquired distinctiveness and had not acquired distinctiveness as of the date the '689 Registration Issued.

56. The claimed mark covered by the '689 Registration is an ornamental design, which fails to function as a source-identifying trademark on the goods identified in the '689 Registration.

57. The application for the '689 Registration should have been refused under Section 2 of the Lanham Act, 15 U.S.C. § 1052, and the '689 Registration should be cancelled pursuant to 15 U.S.C. § 1119. Alternatively, if the Court will not cancel the '689 Registration in its entirety, the Court should exercise its authority under 15

U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '689 Registration to more accurately describe the very narrow rights shown in the drawing of the mark.

58. Maintenance of the '689 Registration is causing and will cause damage to Petitioner and the public within the meaning of 15 U.S.C. § 1064.

**FOURTH CAUSE OF ACTION**

**(Cancellation of US Trademark Reg. No. 5,067,692 for Lack of Inherent or Acquired Distinctiveness and/or Failure to Function as a Mark)**

59. F21 OpCo incorporates paragraphs 1 through 58 herein by reference.

60. The claimed mark covered by the '692 Registration is a product configuration that is an ornamental design as used in connection with the goods identified in the '692 Registration.

61. The claimed mark covered by the '692 Registration is not inherently distinctive.

62. The claimed mark covered by the '692 Registration has not acquired distinctiveness and had not acquired distinctiveness as of the date the '692 Registration Issued.

63. The claimed mark covered by the '692 Registration is an ornamental design, which fails to function as a source-identifying trademark on the goods identified in the '692 Registration.

64. The application for the '692 Registration should have been refused under Section 2 of the Lanham Act, 15 U.S.C. § 1052, and the '692 Registration should be cancelled pursuant to 15 U.S.C. § 1119. Alternatively, if the Court will not cancel the '692 Registration in its entirety, the Court should exercise its authority under 15 U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '692 Registration to more accurately describe the very narrow rights shown in the drawing of the mark.

65. Maintenance of the '692 Registration is causing and will cause damage to Petitioner and the public within the meaning of 15 U.S.C. § 1064.

## FIFTH CAUSE OF ACTION

**(Cancellation of US Trademark Reg. No. 5,067,689 for Functionality)**

66. F21 OpCo incorporates paragraphs 1 through 65 herein by reference.

67. The claimed mark covered by the '689 Registration is a functional product configuration.

68. The application for the '689 Registration should have been refused under Section 2 of the Lanham Act, 15 U.S.C. § 1052, and the '689 Registration should be cancelled pursuant to 15 U.S.C. § 1119. Alternatively, if the Court will not cancel the '689 Registration in its entirety, the Court should exercise its authority under 15 U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '689 Registration to more accurately describe the very narrow rights shown in the drawing of the mark.

69. Maintenance of the '689 Registration is causing and will cause damage to Petitioner and the public within the meaning of 15 U.S.C. § 1064.

## SIXTH CAUSE OF ACTION

**(Cancellation of US Trademark Reg. No. 5,067,692 for Functionality)**

70. F21 OpCo incorporates paragraphs 1 through 69 herein by reference.

71. The claimed mark covered by the '692 Registration is a functional product configuration.

72. The application for the '692 Registration should have been refused under Section 2 of the Lanham Act, 15 U.S.C. § 1052, and the '692 Registration should be cancelled pursuant to 15 U.S.C. § 1119. Alternatively, if the Court will not cancel the '689 Registration in its entirety, the Court should exercise its authority under 15 U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '692 Registration to more accurately describe the very narrow rights shown in the drawing of the mark.

73. Maintenance of the '692 Registration is causing and will cause damage to Petitioner and the public within the meaning of 15 U.S.C. § 1064.

## PRAYER FOR RELIEF

WHEREFORE, F21 OpCo prays for the following relief:

1. A judgment declaring that none of the Disputed Footwear infringes any valid trademark or trade dress rights owned by AirWair;

2. Cancellation of AirWair's US Trademark Registration No. 5,067,689 or, in the alternative, for an order from the Court to the USPTO under 15 U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '689 Registration to more accurately describe the very narrow rights shown in the drawing of the mark;

3. Cancellation of AirWair's US Trademark Registration No. 5,067,692 or, in the alternative, for an order from the Court to the USPTO under 15 U.S.C. § 1119 to "rectify the register" and limit the description of the mark depicted in the '692 Registration to more accurately describe the very narrow rights shown in the drawing of the mark;

4. An award of costs in this action;

5. A finding that this case is "exceptional" within the meaning of 15 U.S.C. § 1117 and a corresponding award of attorneys' fees in F21 OpCo's favor; and

6. For such other, further, or different relief as the Court deems just and proper.

Dated: March 14, 2022

Respectfully submitted,

KATTEN MUCHIN ROSENMAN LLP

By: _/s/ Joanna M. Hill_
Attorneys for Plaintiff F21 OpCo, LLC